## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TROY CONNELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO.: 2:21-cv-00629-RDP-GMB** |
| ) | |
| **JEFFERSON DUNN, in his official** ) | |
| **capacity as the Commissioner of the** ) | |
| **Alabama Department of Corrections;** ) | |
| **Correctional Officer JOE BINDER,** ) | |
| **Correctional Officer KELLER** ) | |
| **SPEAKS, Correctional Officer** ) | |
| **ZACHARY MCLEMORE,** ) | |
| **Sergeant SAMUEL AARON** ) | |
| **and Warden DARREL FOX,** ) | |
| ) | |
| **Defendants.** ) | |

## FIRST AMENDED COMPLAINT

For an amended complaint against Jefferson Dunn, in his official capacity as Commissioner of the Alabama Department of Corrections, Correctional Sergeant Samuel Aaron, Correctional Officer Joe Binder, Correctional Officer Keller Speaks, Correctional Officer Zachery McLemore, and Warden Darrel Fox, Troy Connell states:[1]

---

[1]    This amendment adds paragraphs 51 through 59, which paragraphs describe the personal knowledge of Commissioner Jeff Dunn.

### *Introduction*

Troy Connell has been incarcerated for all his adult life and for part of his adolescence upon conviction for a felony murder that occurred when he was 16 years old.  While at Donaldson Correctional Facility he testified at a hearing inquiring whether a guard had unlawfully beaten another inmate.  In this action, he seeks recovery of damages for a beating that guards administered on him after he testified at that hearing.  He also seeks damages for the conditions of his confinement in administrative segregation, part of which confinement was imposed on him in retaliation for his having testified at the hearing mentioned above, but all of which occurred in conditions that violate the Eighth Amendment.  Finally, he seeks injunctive relief requiring his return to the general population.

### *Parties*

1.     Troy Connell is a natural person over the age of 21.

2.     Connell was incarcerated at Donaldson Correctional Facility and then at St. Clair County Correctional Facility from 2019 forward.

3.     Samuel Aaron is a natural person over the age of 21 and Aaron resides in the Northern District of Alabama.

4.     Joe Binder is a natural person over the age of 21 and Binder resides in the Northern District of Alabama.

2

5.      Keller Speaks is a natural person over the age of 21 and Speaks is a resident of the Northern District of Alabama.

6.      Zachary (or Zachery) McLemore is a natural person over the age of 21 and is a resident of the Northern District of Alabama.

7.      Jefferson Dunn is a natural person over the age of 21 and Dunn is a resident of the Middle District of Alabama.

8.      Darrell Fox is a natural person over the age of 21 and Fox is a resident of the Northern District of Alabama.

### Jurisdiction and Venue

9.      Connell brings this action pursuant to certain of the Enforcement Acts, as codified at 42 U.S.C. 1983.

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331.

11.     Venue in this action is proper in the Southern Division of the Northern District of Alabama.

### Facts

12.     In the first quarter of 2019, Connell testified at a disciplinary hearing held to determine whether a correctional officer had unlawfully beaten an inmate at Donaldson Correctional Facility.

13.     After Connell testified, a correctional officer named Big G told Connell that Connell would leave Donaldson in a body bag carried out the back gate.

3

14.    After Connell was returned to his cell, he was denied proper medicines (guards would give him the wrong medicine), he was denied showers, and he was the subject of retaliation because he had testified at the disciplinary hearing.

15.    Connell did not respond to these retaliations, which were designed to provoke him.

16.    These retaliations were undertaken by correctional officers acting in concert together to retaliate against Connell for testifying at the disciplinary hearing.

17.    In May 2019, Connell and other prisoners housed in his area were placed on a "kick out" list, meaning they were designated to be moved to another section of the prison.

18.    After the prisoners were removed from their cells, Aaron told Connell to go back into his cell.

19.    Connell's cellmate was removed from the cell.

20.    Either Aaron, Binder, Speaks, or McLemore closed the door to the cell.

21.    Aaron told Connell to come to the cell door.

22.    Aaron then sprayed pepper spray directly into Connell's face, which was inches away from the pepper spray can.

23.    Aaron then told Connell to lie face down on the floor and to put his hands behind his back.

24.    Connell complied with this order from Aaron.

25.    Aaron, Binder, McLemore, and Speaks entered the cell where Connell lay face down on the floor.

26.    While Connell was lying face down on the floor, Aaron beat Connell with a metal baton.

27.    Binder, McLemore, and Speaks could have intervened to stop Aaron from beating Connell with the metal baton, but did not.

28.    Instead, Binder, McLemore, and Speaks waited until Aaron had administered several blows and Connell moved to resist further blows from Aaron.

29.    Then, under a pretense of necessity, Binder, McLemore, Speaks, and Aaron began kicking Connell.

30.    Aaron continued to administer blows with the metal baton.

31.    McLemore, Speaks, and Binder continued to fail to intervene.

32.    Eventually, McLemore, Speaks, Binder, and Aaron left the cell.

33.    Aaron, Binder, McLemore, and Speaks were wearing heavy boots when they were kicking Connell.

34.    When they left the cell, McLemore, Speaks, Binder, and Aaron believed Connell was dead or dying. However, Connell was not dead.

35.    Connell gave no lawful cause to Aaron, McLemore, Speaks or Binder for the use of force as described herein.

36.    The use of force as described herein was excessive.

37.    McLemore, Speaks, and Binder could have stopped Aaron from beating and kicking Connell, but did not.

38.    McLemore, Speaks, Binder, and Aaron each could have kept the other from attacking Connell, but did not.

39.    Watts made Aaron accompany Connell to the infirmary.

40.    While Connell was in the infirmary, someone called Connell's mother.

41.    A nurse in the infirmary took the phone and told Connell's mother that she (Connell's mother) should take action or Connell would be killed.

42.    The beating and stomping that Connell endured was in retaliation for Connell testifying at the hearing held to examine the conduct of Big G.

43.    Connell was eventually discharged from the infirmary to administrative segregation.

44.    Connell ultimately had to be placed on suicide watch at Donaldson at his own request so that he would be monitored by cameras, thereby reducing the risk that he would be killed by guards.

45.    Connell was transferred to St. Clair County Correctional Facility, where he was housed with an inmate who was openly having a psychotic break from reality.

46.    The inmate attacked Connell, who was badly injured, but Connell survived the attack.

6

47.     Connell was then moved to administrative segregation, where he remains today.

48.     The conditions of administrative segregation at St. Clair are unfit for human habitation. Insects, inoperable plumbing, and mold endanger the health of inmates housed in administrative segregation.

49.     Connell was housed with a psychotic inmate and then transferred to administrative segregation because Connell had exercised his rights protected by the First Amendment to the U.S. Constitution, just as he was beaten and stomped because he had exercised his rights under the First Amendment.

50.     Jeff Dunn had actual knowledge of the conditions in which Connell was housed.

51.     In the case styled *Braggs v. Dunn* in the United States District Court for the Middle District of Alabama, Dunn testified under oath that he personally reviewed the facts relating to each suicide in the custody of the Alabama Department of Corrections.

52.     Connell was transferred into a cell whose previous occupant had committed suicide by hanging.

53.     Connell knows that the previous occupant had committed suicide by hanging because he was so informed and because correctional officers made Connell cut down the rope that the previous occupant had used.

7

54.     Counsel for Connell cannot give a precise date on which this move occurred, and there have been many suicides at St. Clair during the relevant period. Counsel had previously scheduled a meeting with Connell, but that meeting was postponed by ADOC until the day that this amendment was due. However, upon information and belief, the previous occupant of the cell into which Dunn was transferred would have been one of the few suicides or attempted suicides that occurred by hanging while Connell was at St. Clair and may in fact have been the only one. This allegation should help the ADOC to narrow down which suicide Connell is talking about.

55.     Later Connell was moved to another cell a few units down from the cell of the former suicide (or attempted suicide), but that unit was, as would be expected, substantially similar to the utterly filthy and bug infested cell of the former suicide.

56.     Connell further avers, upon information and belief, that the Alabama Department of Corrections has characterized him, for purposes of the *Braggs* litigation, as seriously mentally ill (SMI) from time to time, based on the medications that medical personnel have continually encouraged him to take and based on the fact that Connell has been housed in a mental health unit from time to time.

57.     Upon information and belief, the Court in the *Braggs* litigation requires reporting on the health of inmates characterized as SMI. Such reports are filed only under seal. Connell further avers that Dunn receives the reporting and would

therefore have information about Connell's health.  Since being forced to occupy the cell of the former suicide, Connell has suffered not only bug bites so pervasive as to be characterized as scabies, but has also lost over 100 pounds due to severe malnourishment.  Thus, Dunn knows full well about the condition of Connell, a malnourished man covered in bug bites in a cell that Dunn himself has personally investigated.

58.    Likewise, Warden Fox has had actual personal knowledge of all the conditions of Connell's confinement.  He also has the power to take action to improve conditions, but has not done so.

59.    At all times described herein, each defendant acted under color of State law.

### Count I

### Excessive Force
### 42 U.S.C. 1983
### Aaron, Binder, McLemore and Speaks

60.    Connell adopts and incorporates by reference paragraphs 1 through 59 of this Complaint.

61.    The actions of Aaron, Binder, McLemore, and Speaks violated Connell's right under the Eighth Amendment to remain free from cruel and unusual punishment and Connell's rights of free expression under the First Amendment.

9

**Count II**

**Bystander Liability**
**42 U.S.C. 1983**
**Aaron, Binder, Speaks, and McLemore**

62.    Connell adopts and incorporates by reference paragraphs 1 through 59 of this Complaint.

63.    Connell was attacked within the confines of a prison cell.

64.    Aaron, Binder, Speaks and McLemore were all either in or by the door of the cell while the attack occurred.

65.    Aaron, Binder, Speaks, and McLemore each had a constitutional duty to stop the attack of the others on Connell, but each failed to do so.

66.    This failure on the part of Aaron, Binder, McLemore, and Speaks violated the rights of Connell under the First, Eighth, and Fourteenth Amendments.

**Count III**

**Conditions of Confinement**
**42 U.S.C. 1983**
**Warden Darrell Fox**
**Commissioner Jefferson Dunn**

67.    Connell adopts and incorporates by reference paragraphs 1 through 59 of this Complaint.

68.    Confinement in the conditions of administrative segregation at St. Clair is per se unconstitutional because the conditions are unfit for human habitation.

10

69.    In particular, and without limitation, the conditions are vermin infested, mold infested, and without adequate plumbing.

70.    These conditions are particularly unlawful for Connell because he has done nothing that would justify his being forced to stay in solitary confinement at all, much less conditions such as those in which he has been housed.

71.    The actual, substantive motivation for Connell's confinement in administrative segregation is the exercise of his rights protected under the First Amendment.

72.    Confinement of Connell under such conditions violates his rights under the First and Eighth Amendments.

73.    Warden Fox and Commissioner Dunn are responsible for confining Connell in these conditions.

74.    Without limitation of the foregoing, it is completely implausible for Dunn or Fox to allege that they do not know about the conditions of confinement in the unit(s) in which Connell has been housed. The United States Department of Justice has commenced an action against the State of Alabama in this very Court about the conditions of confinement within ADOC.  The State of Alabama has represented to the United States that conditions within ADOC are so bad that the State must spend hundreds of millions of dollars to build new prisons, even though Congress initially allocated that money to pay for such things as rural broadband or

healthcare.  For Dunn, or anyone affiliated with the management of ADOC, to maintain that the conditions of confinement are not horrible or that they are not aware of those conditions is cynical.

WHEREFORE, Connell respectfully requests this Court enter judgment for money damages, including but not limited to nominal, compensatory, special, and punitive damages, attorneys' fees, and costs in an amount to be determined by a jury. Connell also requests an injunction requiring his return to the prison general population.

Respectfully submitted,

/s/ *Frank Ozment*

Frank Ozment (ASB-7203-N73J)
Raymond Andrew Garrison, Jr.
(ASB-1776-Q18N)
Frank Ozment Attorney at Law, LLC
217 Country Club Park, Box 501
Birmingham, AL 35213
Phone:  (205) 847-5401
frankozmentlaw@gmail.com
raymondgarrison3425@gmail.com

**Attorneys for Plaintiff**

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of October, 2021, a copy of the foregoing has been filed with the Clerk using the Court's CM/ECF system which will give notice to the attorneys representing Defendant Commissioner Jefferson Dunn.  The remaining defendants will be served by a process server.


       /s/ *Frank Ozment*

       Of Counsel