UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TROY CONNELL, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:21-cv-629-GMB |
| JOE BINDER, *et al.*, | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 1983, Plaintiff Troy Connell alleges violations of his Eighth Amendment rights by Defendants Joe Binder, Keller Speaks, Zachary McLemore, and Samuel Aaron ("the officers"). Docs. 23 & 45. Before the court is the officers' Motion for Summary Judgment. Doc. 78. Connell filed a brief in opposition to the motion (Doc. 82), and the officers filed a reply. Doc. 83. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 38. After careful consideration of the parties' submissions and applicable law, the motion for summary judgment is due to be granted in part and denied in part.

### I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). "The purpose of summary judgement is to separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## II.  SUMMARY JUDGMENT FACTS[1]

---

[1] The defendants' version of the facts materially differs from Connell's version, but the court rejects the officers' argument that no reasonable person could believe Connell's testimony. Doc. 83 at 5–11.  In arguing this point, the defendants rely on inconsistencies in Connell's testimony, the officers' own statements, a disciplinary report, and incident and investigatory

On May 15, 2019, Aaron, a supervisor on the restrictive housing Y-Unit at Donaldson Correctional Facility, gave McLemore, Binder, and Speaks a "kick-out list" to complete. Doc. 78-7 at 2; Doc. 78-8 at 2; Doc. 78-9 at 2; Doc. 79-9 at 2.  The kick out list included the names of inmates housed in the Y-Unit who had been designated for release back to the general prison population because they completed "all behavior modification courses and [did] not receiv[e] any disciplinary actions over a certain period of time." Doc. 78-8 at 2; Doc. 78-9 at 2; *see also* Doc. 78-6 at 28.  Connell's name was on the kick-out list. Doc. 78-6 at 28; Doc. 78-7 at 2; Doc. 78-8 at 2; Doc. 78-9 at 2; Doc. 79-9 at 2.

Binder opened Connell's cell door and Connell asked if he could return a pair of shower shoes to another inmate. Doc. 78-6 at 9.  Binder allowed Connell to walk nine cells down to return the shoes. Doc. 78-6 at 8–9.  While there, the other inmate asked Connell "to pass a wick"[2] to an inmate in another cell. Doc. 78-6 at 9.  When

---

reports. *See* Doc. 83 at 10–11.  This is not the type of objective evidence that renders a deponent's testimony to be implausible and unworthy of credence. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that the video recording of a police chase "utterly discredited" the plaintiff's testimony such that "no reasonable jury could have believed him" and the lower courts "should have viewed the facts in the light depicted by the videotaped").  Here, the evidence in question does support the officers' version of events, but it "does not so utterly discredit [Connell's] testimony that no reasonable juror could believe it." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013).  In addition, the contemporaneous body chart largely supports Connell's testimony, and although defense counsel referenced pictures of Connell's injuries during his deposition (Doc. 78-6 at 18–19), these images are not part of the record.  Accordingly, the court summarizes the evidence in the light most favorable to Connell as the non-movant, with reasonable inferences drawn in his favor, consistent with the summary judgment standard.

[2] "A wick is a piece of tissue lit, something that people use to light a cigarette with." Doc. 78-6 at 9.

Connell slid the wick on the floor, Binder began "hollering and going crazy." Doc. 78-6 at 9. Binder then called on his radio to remove Connell from the kick-out list and locked Connell back in his cell with his cellmate. Doc. 78-6 at 9. Aaron, Binder, Speaks, and McLemore then moved Connell's cellmate out of the cell. Doc. 78-6 at 9 & 21.

When the officers returned, Connell bent down to try to talk to Aaron through the tray door, but Aaron sprayed Connell with pepper spray[3] through the door. Doc. 78-6 at 9 & 10. Connell stepped back, took off his shirt, and began to splash water on his face, as Aaron, Speaks, Binder, and McLemore opened his cell door and entered. Doc. 78-6 at 9–10 & 11. Aaron and McLemore ordered Connell to get down on the ground with his hands behind his back. Doc. 78-6 at 10 & 11. He complied but then one of the officers "hit [him] in the back of the head with a steel stick." Doc. 78-6 at 10, 11, 14.

While Connell was on the ground, Speaks kicked him and threatened to break his neck. Doc. 78-6 at 12 & 16. The officers "started beating [Connell] with the stick and they were still stomping [him] at the same time" as he was rolling around on the cell floor. Doc. 78-6 at 14. While the other officers continued to beat him, McLemore "got a cell buster out of the cube . . . and sprayed [Connell] some more with the cell buster inside the cell." Doc. 78-6 at 13. "They continued to beat

---

[3] The pepper spray got into Connell's eyes. Doc. 78-6 at 10.

5

[Connell] and spray pepper spray the while time." Doc. 78-6 at 16.

Aaron, Speaks, and Lieutenant Watts eventually took Connell to the infirmary. Doc. 78-6 at 17. He received six staples to close a five-inch laceration on the back of his head. Doc. 78-6 at 17 & 23; Doc. 77-4. There was a cut above his right eye and his "lip was all busted up. [His] tooth felt like it had went through [his] lip there and [his] face was cut up." Doc. 78-6 at 18. There were "red linear areas" on his right shoulder measuring 11 by 10 inches and across his back measuring 19 by 11 inches. Doc. 77-4. He had an area of bruising and swelling under his right eye and both eyes were red. Doc. 77-4.

### III. DISCUSSION

Connell sues the officers for excessive force and for failure to intervene. Doc. 23 at 9–10. The officers move for summary judgment on both claims. Doc. 78. Connell, however, focuses exclusively on the claim for excessive force and does not address the officers' arguments about his claim for failure to intervene. Doc. 78 at 2–20. The only statements in his opposition brief that arguably relate to the failure to intervene are the passing remark that "even if Sergeant Aaron did not strike Plaintiff, he is liable if he merely stood by while other corrections officers did so" (Doc. 82 at 17), and one sentence in the conclusion section stating boilerplate law on failure to intervene. Doc. 82 at 19. These cursory statements are insufficient to preserve the claim, and the court finds that Connell has abandoned it. *See Access*

6

*Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."); *see also Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019) (declining to address one of the plaintiff's arguments because she raised it "'in a perfunctory manner without supporting arguments'") (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–82 (11th Cir. 2014)). With that understanding, the only remaining claim is for excessive force in violation of the Eighth Amendment pursuant to 42 U.S.C. § 1983.

Section 1983 creates a private right of action to vindicate violations of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Under the terms of the statute, "[e]very person who acts under color of state law to deprive another of a constitutional right [is] answerable to that person in a suit for damages." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (citation and internal quotation marks omitted). Connell contends that the officers violated his Eighth Amendment right to be free from excessive force when they entered his cell and beat him while he was not resisting. Doc. 23 at 9. There is no dispute that the officers were acting under the color of state law at all relevant times.

The Eighth Amendment's proscription of cruel and unusual punishments protects prisoners from prison officials' use of excessive force. *Campbell v. Sikes*,

7

169 F.3d 1353, 1374 (11th Cir. 1999).  The federal courts analyze excessive force claims under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  This analysis includes both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind'" and (2) whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

For the subjective component of the analysis, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.  The relevant factors include (1) the need for any application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. at 6; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

The objective component of an excessive force claim "focuses on whether the official's actions were harmful enough . . . or sufficiently serious to violate the Constitution." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (internal quotation marks and citations omitted).  The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force

8

claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Instead, "the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1265 (quoting *Wilkins*, 559 U.S. at 37).  Although the Eleventh Circuit has rejected a bright-line standard mandating a more-than-*de-minimis* injury, the Eighth Amendment still "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 1265–67 (citing *Wilkins*, 559 U.S. at 37–38).

The court must be mindful that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  And generally courts will "not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).  "When evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863–64 (11th Cir. 2016).

Applying these principles to the summary judgment facts, the court concludes that Connell has created a genuine dispute of fact as to whether Aaron, Speaks, Binder, and McLemore used excessive force. When viewed in the light most favorable to Connell, the evidence establishes that Aaron, Speaks, Binder, and McLemore sprayed Connell with pepper spray and cell-buster spray, hit him with their batons, and stomped and kicked him. Assuming Connell's version of the facts is true, there is no evidence he resisted or provoked the officers. Instead, Connell testified that he obeyed their command to lay face down and put his hands behind his back. Taking these facts in the light most favorable to Connell, there was no reason for the officers to use any force. The evidence at summary judgment thus is sufficient to support an inference that Aaron, Speaks, Binder, and McLemore gratuitously used force in violation of Connell's constitutional rights. *See Sears v. Roberts*, 922 F.3d 1199, 1209 (11th Cir. 2019); *Skrtich v. Thornton*, 280 F.3d 1295, 1300–01 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (concluding that officers used excessive force when they kicked, punched, and beat a prisoner who was not resisting). Put another way, if a jury believes Connell's testimony, these facts reasonably establish that the use of force by Aaron, Speaks, Binder, and McLemore "was applied . . . maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

The officers assert the affirmative defense of qualified immunity. Doc. 78 at

41–45. Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority at the time of the conduct in question, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007). To defeat qualified immunity, a plaintiff must show both a constitutional violation and that the constitutional right violated was clearly established. *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011).

"In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.'" *Bowden v. Stokely*, 576 F. App'x 951, 954–955 (11th Cir. 2014) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010)). "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Id.* at 955 (11th Cir. 2014) (citing *Skrtich*, 280 F.3d at 1301); *see also Davis v. Locke*, 936 F.2d 1208, 1213 (11th Cir. 1991) (concluding it was clearly established that "the unjustified use of excessive force by a prison guard against an inmate" violates the Eighth Amendment). Because

Connell has created a dispute of fact material to the excessive force claim, the officers are not entitled to qualified immunity. The motion for summary judgment is due to be denied as to Connell's Eighth Amendment excessive force claim.

### IV. CONCLUSION

For these reasons, it is ORDERED that the Motion for Summary Judgment (Doc. 78) is GRANTED in part and DENIED in part. Summary judgment is GRANTED on Connell's claims for failure to intervene, and these claims are DISMISSED with prejudice. Summary judgment is DENIED on Connell's excessive force claims.

Additionally, it is ORDERED that this matter is SET for a Pretrial Conference on **February 25, 2025, at 10:30 a.m.** in the chambers of the undersigned within the Hugo L. Black U.S. Courthouse, 1729 Fifth Avenue North, Birmingham, Alabama. All attorneys who will participate in the trial of this case shall attend the conference in person unless they have received prior approval from the court.

It is further ORDERED that on or before **February 21, 2025**, the parties shall submit a joint proposed pretrial order to the court in Word format via email to borden_chambers@alnd.uscourts.gov. The court's sample pretrial order is available on the Northern District of Alabama's website.

DONE and ORDERED on February 10, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE